In the Matter of the Estate of FELICJA O. HERTZ, Deceased.

Surrogate's Court, New York County, April 1, 1949.

*Kaye, Scholer, Fierman & Hays* for Benjamin M. Kaye, as ancillary administrator *c.t.a.* of Felicja O. Hertz, deceased, petitioner.

*Thomas W. Kelly* for Alexis C. Coudert and another, respondents.

*Herbert Rand* for Stefan Osser, respondent.

COLLINS, S. The ancillary administrator *c.t.a.* asks permission to turn over all of the assets in his possession to the brother of the decedent in his status as sole heir and universal legatee. The application is opposed by a legatee under a will established in the Principality of Monaco.

The decedent, a citizen of Poland, died on February 24, 1944, at Monaco. On February 20, 1944, she had executed a holographic will in the Polish language, the English translation of which insofar as material reads: " I leave in inheritance my money, viz.: Eighty thousand dollars, as well as the securities

deposited with the ' Bank of London & South America ' 55 Cedar Street, New York (Branch of Lloyds) and as well as the money deposited with Thoboorn at Liverpool and that which is in London in a safe deposit box, 71 Haymarket, Lloyds Bank, to Tomasz Bergson, and they constitute his exclusive property.'' In an accounting proceeding now pending before the court it appears that the former ancillary administrator *c.t.a.* is accounting for securities of the decedent that were on deposit here and cash in the Bank of London and South America in the sum of $81,610.50. The respondent Bergson, a Polish citizen residing in Monaco, claims this property as the subject matter of his legacy.

The 1944 will was established in Monaco and respondent Bergson thereafter applied to the Civil Tribunal of First Instance of the Principality of Monaco for an order placing him in possession of his legacy. In his petition to that court he was described as '' legatee by universal title ''. An order was made placing him in possession of the legacy. Thereafter his attorney in fact applied for ancillary letters of administration *c.t.a.* on the theory that Bergson was the universal legatee and letters were granted to the attorney in fact.

The decedent was survived by a brother, Stefan Osser, a Polish national residing in Brazil. Respondent Osser moved in this court to revoke the ancillary letters granted to the nominee of Bergson. In that application it was alleged that a will dated December 1, 1942, had been established in France and that under this earlier instrument the brother was the universal legatee. It was also alleged that Bergson had made material misrepresentations in his petition in respect of his claim that he was the universal legatee and also in respect of the domicile of the decedent and the right of Bergson to administer the estate. Respondent Bergson admitted that the statement that he was the universal legatee was incorrect, but he contended that he was a legatee by universal title and the person entitled under the law of the domicile of the decedent to the personal property located in New York. The issues raised by the pleadings were brought on for hearing before the court. During the course of that litigation Osser instituted proceedings in Monaco to set aside the order placing Bergson in possession of the legacy. The court in Monaco made a decree revoking the order of possession. An appeal from that order is said by Bergson to be now pending.

It became apparent in the course of the prior proceeding in this court that it would be necessary to obtain a construction of the will in Monaco before the proceeding here could be con-

cluded. Meanwhile, however, it appeared that there was another asset of the estate in this State to which Bergson made no claim under the will, consisting of a cause of action in favor of the decedent. It was necessary that the fiduciary take immediate steps to protect the decedent's interest. Respondent Osser filed a petition reciting the two wills (though he refused to concede the validity of the one established in Monaco), alleging the existence of the property not claimed to be part of Bergson's legacy, and praying that ancillary letters of administration *c.t.a.* be issued to his nominees. When it was established that there was additional property here to which Bergson had no claim, it was obvious that he did not have the right under the foreign law to all of the property located here. It was also undisputed that under the law of Monaco and of France the brother, as sole heir, had the right to administer the property in those jurisdictions. Thereupon the litigation terminated, the letters theretofore issued were revoked and ancillary letters were issued to the nominees of the decedent's brother.

The litigation between the brother and the respondent Bergson in respect of the issuance of ancillary letters terminated by decree dated May 18, 1948. That decree provided that the assets in this State should be retained within the jurisdiction of this court and that none of them should be paid to respondent Osser or to any other person claiming any interest, except upon further order of the court and upon notice to respondent Bergson. The decree further provided that nothing therein contained should be construed as an adjudication respecting the validity or invalidity of any of the testamentary instruments and that the decree was without prejudice to the rights of any of the parties to contest the validity of any will or of any of the provisions thereof " in any tribunal having jurisdiction of the matter."

It was obvious that the litigation between Osser and Bergson respecting the decedent's property was only in the initial stages. Under the will established in Monaco, Bergson would appear to be entitled to the securities here and to an amount of money equal to the fund on deposit here, his precise rights depending on a construction of the will as well as on payments, if any, made to him in the foreign jurisdiction. Osser, on the other hand, contended in the prior proceeding that he is the universal legatee under the 1942 will established in France and that the 1944 will should be given no recognition or effect. He maintained that the decedent was domiciled in France and not in Monaco and that the courts of the latter country were without juris-

diction to probate her will. In addition, he argued that the 1944 will, even if valid, must be construed only as a codicil to the French will and that it did not revoke his appointment as universal legatee. Finally, he asserted that the 1944 will indicates that the decedent believed her brother to be dead and that under such circumstances the law of France (which he claims must be applied) makes null and void all the dispositions made in such will. The laws of France and of Monaco are substantially similar and the experts at the hearing cited the law and rules of the former jurisdiction as applicable in the latter. The respondent Osser, however, preferred to litigate all of these questions in this court, including questions dealing with the jurisdiction of the foreign courts under their own law and the meaning and effect of decrees made by them. This court pointed out to counsel, however, that this State should not be the forum for extensive litigation between two nonresident aliens in respect of the succession to the property of another nonresident alien. (*Matter of Cornell*, 267 N. Y. 456.) At the termination of the litigation respecting the issuance of ancillary letters and the preservation of the assets here, it was the understanding of the court that the further disputes between the parties would be litigated in the courts in France or in Monaco, where the respective instruments have been established.

On July 28, 1948, however, respondent Osser made demand upon the ancillary administrator *c. t. a.,* who had been nominated by him for delivery to him of all of the assets of the decedent in this State. The formal claim was apparently made in his status as sole heir under the law of Monaco and of France and as universal legatee under the French will. He expressly stated that the assets were to be delivered to him in New York and not sent to Europe and he indicated that they would eventually be transferred to Brazil, his residence. The suggestion that the assets be transferred to him in his status as sole heir and universal legatee under the French will implied that he was demanding the transmission of the assets to the person who was the equivalent of the domiciliary fiduciary, and that he would thereupon administer the assets pursuant to the law of the domicile of the decedent. If the assets were to be sent to the sole heir in the jurisdiction of Monaco and were to be administered under the supervision of the courts of that country, such transmission would be proper. Respondent Osser, however, has consistently contended that the will established in Monaco is of no validity and effect and has refused to recognize it. He apparently

refuses to submit himself to the jurisdiction of the courts of Monaco or of France. The delivery and transmission of the assets to him would in effect be a practical denial of the rights of the respondent Bergson because it would place these substantial assets beyond the jurisdiction of this court and beyond the jurisdiction of the courts of the domicile of decedent.

It is argued that Bergson has failed to proceed promptly in Monaco or in France to enforce his rights. Respondent Osser, however, who claims to be entitled under the laws of both those countries to administer the decedent's property, has failed to take any steps to administer the property in those jurisdictions or to submit the property to the jurisdiction of the foreign courts. If he desires prompt determination of the issues he may initiate the necessary proceedings.

The rights of the respective parties in respect of the property within the jurisdiction of this court can be preserved only by retention of the property in the hands of the ancillary administrator *c. t. a.,* until it can be determined who is the person entitled under the laws of the foreign state or country to such property. The application of the petitioner is, therefore, in all respects denied.

Submit decree on notice accordingly.